## DECISION OF CHIEF JUSTICE LEE.—IN ADMIRALTY.

---

### IN THE MATTER OF THE CLAIM OF B. F. ANGEL, Esq.,
*U. S. Consul at Honolulu, for three months' wages of Seamen discharged from the ship "Nile."*

When the master of an American ship fails to comply with the Act of Congress of 1803, and produces no crew list, it will be presumed that the seamen discharged from his ship are American citizens; and the burden of proof will rest on the master to show that they are not so.

The American ship " Nile " of San Francisco, entered the port of Honolulu in October last, and was attached at the suit of Thomas Spencer for supplies furnished by him to the bark "Walter Claxton," on the faith and credit of her owners, Messrs. Bailey & Gilbert, of San Francisco, who, it was said, were also the owners of the "Nile." Upon the seizure of the " Nile " under the attachment, Mr. Angel discharged all of her crew, except one or two who were not willing to be discharged, all of whom he claims are American citizens, with the exception of four Portuguese, and as such, entitled to the benefit of the Act of the United States, passed February 28, 1803, for the

protection of American seamen, and which requires the captain of every American vessel, when any seamen or mariner, being a citizen of the United States, is discharged in a foreign country, to pay to the Consul of the port where he is discharged, three months' pay over and above the wages which may then be due to such mariner or seaman.

This claim is resisted by the counsel of Spencer, on the ground that it has not been legally shown that the seamen discharged are *American citizens;* and consequently they are not entitled to the advance wages.

The United States Act of 1803, under which this claim is made, provides, that before a clearance "be granted to any vessel bound on a foreign voyage, the master thereof, shall deliver to the Collector of the customs, a list, containing the names, places of birth and residence, and a description of the persons who compose his ship's company, to which list the oath or affirmation of the captain shall be annexed, that the said list contains the names of his crew, together with the places of their birth and residence, as far as he can ascertain them, and the said collector shall deliver him a certified copy thereof."

Section 3, of the same Act further provides, " That whenever a ship belonging to a citizen of the United States shall be sold in a foreign country, and her company discharged, or when a seaman or mariner, *a citizen of the United States,* shall, with his own consent, be discharged in a foreign country, it shall be the duty of the master or commander to produce to the consul, vice-consul, commercial agent, or vice-commercial agent, the list of his ship's company, certified as aforesaid; and to pay to such consul, commercial agent, or vice-commercial agent, for every seaman or mariner so discharged, *being designated on such list as a citizen of the United States,* three months' pay, over and above the wages which may then be due to such mariner or seamen," &c.

The only question in this matter is, whether the *American citizenship* of the seamen discharged is sufficiently proved; for, if it is, then it is admitted that the three months extra wages should be paid, and if not, that the claim should be refused.

The facts are, that, at the time of the discharge of the seamen, no crew list was produced by the captain, as is required by statute, and it is said that the captain never had one. Therefore, it is contended that the section of the act requiring the payment of three months' extra wages has not been complied with, and the claim ought not to be upheld, inasmuch, as the statute only requires such wages to be paid "for every seaman or mariner so discharged, *being designated on such list as a citizen of the United States.*" Now it is clear, says the contestant, that these discharged seamen never were so designated on the crew list, for none was produced by the captain; and their *American citizenship* cannot be proved by any other evidence than the list itself. I am fully aware of the danger of a latitudinarian construction of the statute in cases like this, but in avoiding one extreme we must not rush to the other, lest by a too narrow construction we do violence to the spirit of the law and the plain intention of the law makers. Would it be reasonable or just to decide that because the captain has no crew list, or having one, fails to produce it, the advance wages are not to be paid to the consul for men discharged by

him? Would it not, on the contrary, be doing violence to the plain intention of Congress and the spirit of the law? I think it would. Such a doctrine would place it in the power of every master of a ship desirous of avoiding the payment of the three months' extra wages, to take advantage of his own fault, and set the law and Consul at defiance. Where the captain of an American vessel fails to comply with the law, and produces no crew list, I think it is fair to presume that the seamen discharged from his ship are citizens of the country under whose flag they sail; and that the burden of proof rests on the captain to show that they are not so. He should not be allowed to avail himself of his own laches to defeat the claim. If he has no crew list, and can satisfy the Consul by other evidence that the seamen discharged are not citizens of the United States, very well, but if he neglect or fail to do that, I see no fair way of escape from the requirements of the law.

If our reasoning on this subject be sound, then we are driven to the inevitable conclusion that the claim is a legal one. The U. S. Consul, Mr. Angel, testifies that he was satisfied, by the production of the seamen's protections, and by enquiry of the men, that they were all American citizens, with the exception of four Portuguese, and it was on this ground that he received those of them who were sick into the hospital. It is clear to me, that for each of the seamen discharged into the hospital the three months' extra pay should be paid, but in relation to those who were discharged well,—who have been no charge on the hospital, and who, it is admitted, have nearly if not quite all shipped in other vessels and left the country, I am not so clear. I do not hesitate to pronounce my opinion that the demand of the United States Consul for the three months' advance for each of the well seamen is a *legal* one, but a court of admiralty is, to the extent of its jurisdiction, a court of equity, and, under all the circumstances of the case, which are somewhat peculiar, it seems to me equitable that the claim for the advance wages of those who have shipped in other vessels and departed from the country ought to be disallowed. They have been of no charge to the government, and are not likely to be so. Such a ruling, I humbly conceive, is in accordance with the spirit of the United States Act of 1840, which empowers the Consul to discharge seamen, if he thinks it expedient, without requiring the payment of three months' wages, under the provisions of the Act of 1803, or any other sum of money; and he may make such terms with the master as will save the United States from the liability to support the mariner so discharged. (5 U. S. Statutes at Large, 395.) The United States are saved from the liability in this case to support those who have reshipped, and hence the demand of the extra wages for them, does not rest on the same ground as that for those who still remain on shore and may become a charge on the hospital.

My judgment therefore is, that the three months' advance wages to the six seamen discharged into the U. S. Hospital should be paid, and also for each of the discharged seamen still remaining on shore, and who, in the opinion of the American Consul are liable to become a charge on the United States government.

The amount of wages due to the seamen of the "Nile," at the time of the seizure does not fully appear to me, but I hereby decree

that, in case of the sale of the vessel under the final process of this court, the wages of the seamen shall be first paid from the proceeds thereof, in such amounts as shall be certified to be due them by the American Consul.